## Mitchell Estate

*Richard L. Grossman* and *Arthur L. Jenkins, Jr.,* for petitioner and executors.

*Paul W. Tressler,* Assistant District Attorney, for Commonwealth.

TAXIS, P. J., October 19, 1970.—McNeal Mitchell, Jr., died testate on April 2, 1970, and, by his will, left his printing business, The Mitchell Press, in trust, the income from which is to be paid to his widow, Lucy E. Mitchell, and to their daughter, Michele Mitchell.

Lucy E. Mitchell and American Bank and Trust Company of Pa. qualified as executors and, in the furtherance of their duties as fiduciaries, decided that the printing business was profitable and should be continued.

On or about October 5, 1970, Arthur Goodwin, an employe of The Mitchell Press, was arrested at the printing company and charged with printing football

pool tickets, on printing equipment owned by the estate, all without the knowledge of the executors and the manager of the business.

On October 7, 1970, the Pennsylvania State Police advised the manager of the printing company that they were about to take custody of a one-ton automatic printing press, Heidelberg Automatic. On that same day, the manager, in cooperation with the executors, filed his petition for an injunction seeking to restrain the State Police from seizing and removing this printing press pending further order and hearing.

The matter was heard on October 13, 1970, at which time the trust officer of the corporate executor testified that the removal of this press from the printing company would do irreparable damage to the printing business, because it is the only automatic press in the shop; that other smaller presses are hand operated and are wholly inadequate to process the commercial accounts of this business.

Respondents were represented by an Assistant District Attorney who argued that complete custody of this press immediately and to the time of hearing is required to establish "a chain of custody" and, absent the same, it will be impossible to prosecute defendant, Arthur Goodwin. No evidence was submitted by the Commonwealth, but the court will nevertheless assume the validity of the search warrant, and in this posture the matter requires a determination by this court whether the preliminary injunction should be made permanent or should be dissolved.

This court has complete jurisdiction to protect property within its jurisdiction (section 732 of the Orphans' Court Act of August 10, 1951, P. L. 1163) and this printing press is an estate asset. It is clear

that it is a vital and integral part of the printing business of this estate and entitled to the protection of the court; that removal of this press would require the expenditure of about $5,000 to replace it; and that removal would do irreparable damage to the business of the printing company.

This court finds that the printing press described herein is not a gambling device, and, hence, is not the proper subject of forfeiture, seizure and removal. The test of forfeiture is not whether the machine ever was actually used for gambling, but whether it is a gambling device per se. *Commonwealth v. Logan*, 172 Pa. Superior Ct. 365, 371; *Commonwealth v. Kaiser*, 80 Pa. Superior Ct. 26, 28; *Friedberg Appeal*, 208 Pa. Superior Ct. 312.

In this case, neither the device nor possession of it is unlawful. In American Telephone & Telegraph Company's Appeal, 126 Pa. Superior Ct. 533, a teletype machine was held not to be a gambling device, although admittedly it was an important adjunct to the operation of the gambling establishment in which it was seized.

After hearing and consideration of the evidence and arguments of counsel, this court is satisfied that the Commonwealth's case will not be irreparably prejudiced by not possessing exclusive custody of this printing press until trial as asserted; that assurances have been made that the press will be made available by the estate or a subsequent purchaser if and when this case is tried before a jury. Moreover, the court directs that the estate shall permit the Commonwealth ready access to the premises so that adequate photographs may be made immediately in lieu of actual physical possession of the printing press. It would seem that these substitutionary photographs will be adequate for the Common-

wealth's purposes. Furthermore, the Commonwealth has in its possession the plates and the automatic numbering machine and other moveable parts showing and connecting this press as the instrument used in the printing of these football pool tickets.

It is clear from the evidence that the manager and the fiduciaries had no knowledge whatsoever of the alleged improper conduct of their employe whose alleged improper activities occurred in the evenings, after hours, when the printing shop was closed down.

And now, October 19, 1970, the court directs that the injunction be made permanent.