433 A.2d 55

COMMONWEALTH of Pennsylvania, Appellant,

v.

Karl E. BRETZ.

Superior Court of Pennsylvania.

Submitted June 13, 1980.

Filed July 24, 1981.

260

Thur W. Young, District Attorney, Coudersport, for Commonwealth, appellant.

John A. Duvall, Coudersport, for appellee.

Before HESTER, CAVANAUGH and VAN der VOORT, JJ.

VAN der VOORT, Judge:

This is an appeal by the Commonwealth from an Order denying its Petition for Destruction. At issue are two slot machines confiscated from the appellee's premises.

Appellee was arrested and charged with Corruption of Minors,[1] Involuntary Deviate Sexual Intercourse,[2] Delivery of a Controlled Substance,[3] and Furnishing Liquor to a Minor.[4] On the day of the arrest, the State Police (pursuant to a search warrant) seized the two slot machines here at issue. Appellee entered a guilty plea to Involuntary Deviate Sexual Intercourse and to Furnishing Liquor to a Minor and he was duly sentenced for a period of one (1) to five (5) years in prison.

1. 18 Pa.S.C. § 3125(a) Act of Dec. 6, 1972, P.L. 1482, No. 334 § 1, Repealed July 1, 1978, P.L. 573, No. 104 § 1.

2. 18 Pa.S.C. § 3123(5).

3. 35 P.S. § 780–113(a)(30).

4. 47 P.S. § 4–493(1).

Subsequently the Office of the District Attorney of Potter County, petitioned the court below, to have the slot machines destroyed. Appellee filed an answer denying that the machines were or ever had been evidence; he claimed the machines were antiques under the provisions of 18 Pa.C.S. § 5513; and that they had never been used for any unlawful purpose. After a hearing on the petition, the lower court denied the Commonwealth's request and directed the machines be returned to appellee. The Commonwealth here appeals the disposition of the lower court.

The Commonwealth's basic contention on this appeal is that the Court of Common Pleas erred as a matter of law in failing to find the slot machines were gambling devices per se. We agree.

The provisions of the Crimes Code here involved is 18 Pa.C.S. § 5513, which reads:

§ 5513. Gambling devices, gambling, etc.

(a) Offense defined.—A person is guilty of a misdemeanor of the first degree if he:

(1) intentionally or knowingly makes, assembles, sets up, maintains, sells, lends, leases, gives away, or offers for sale, loan, lease or gift, any punch board, drawing card, slot machine or any device to be used for gambling purposes, except playing cards;

(2) allows persons to collect and assemble for the purpose of unlawful gambling at any place under his control;

(3) solicits or invites any person to visit any unlawful gambling place for the purpose of gambling; or

(4) being the owner, tenant, lessee or occupant of any premises, knowingly permits or suffers the same, or any part thereof, to be used for the purpose of unlawful gambling.

(b) Confiscation of gambling devices.—Any gambling device possessed or used in violation of the provisions of subsection (a) of this section shall be seized and forfeited to the Commonwealth. All provisions of law relating to the seizure, summary and judicial forfeiture, and condem-

nation of intoxicating liquor shall apply to seizures and forfeitures under the provisions of this section.

1972, Dec. 6, P.L. 1482, No. 334, § 1, eff. June 6, 1973.

(c) Antique slot machines.—(1) A slot machine shall be established as an antique slot machine if the defendant shows by a preponderance of the evidence that it was manufactured prior to 1941 and that it was not used or attempted to be used for any unlawful purposes. Notwithstanding subsection (b), no antique slot machine seized from any defendant shall be destroyed or otherwise altered until the defendant is given an opportunity to establish that the slot machine is an antique slot machine. After a final court determination that the slot machine is an antique slot machine, the slot machine shall be returned pursuant to the provisions of law providing for the return of property; otherwise, the slot machine shall be destroyed.

(2) It is the purpose of this subsection to protect the collection and restoration of antique slot machines not presently utilized for gambling purposes.

As amended 1978, July 1, P.L. 572, No. 103, § 1, effective in 30 days.

The lower court determined, as stated in its opinion that the machines were used to induce the young female victim into appellee's apartment. Appellee did not challenge the validity of the search warrant. The court chose to believe the Commonwealth's expert witness that the machines were not antiques as defined in subsection (c) above.

However, the court disagreed with the Commonwealth's reading of subsection (a) that the machines are inherently and by definition gambling devices. The court reasoned that subsection (b), "[a]ny gambling device possessed or used *in violation* of the provision of subsection (a)" [emphasis supplied by lower court] required it to hold "that mere possession of a gambling device or use thereof is not enough but it must be possessed *and* [emphasis ours] *in violation* [emphasis applied by lower court] of subsection (a) in order to be the subject of forfeiture." (Opinion p. 3).

■ The court went on to find that since the slot machines were not "maintained" for a "gambling purpose" subsection (a)(1) was not applicable. The court similarly found that appellee's conduct did not fall under subsection (a)(2), (3) or (4). The end result being that the Commonwealth had no right to forfeiture. The question, whether a slot machine may be forfeited and destroyed as a gambling device per se, even though all parties agree that it has not been used for gambling, has apparently never been explicitly addressed by the appellate courts of Pennsylvania.[5] Nonetheless we have little difficulty in finding that the slot machines in question are gambling devices per se, and subject to forfeiture unless they come within the exclusion of subsection (c).

Under subsection (a) violation occurs when one "intentionally or knowingly . . . maintains . . . any . . . slot machine *or* any device to be used for gambling purposes . . . ." [emphasis added] 'Or' obviously is a disjunctive particle and means one or the other of two propositions; never both." *Marnell v. Mt. Carmel Jt. Sch. Sys. & Coms.*, 380 Pa. 83, 88, 110 A.2d 357 (1955); *Bensalem Twp. S.D. v. Bucks Co. Coms. et al.*, 8 Pa. Cmwlth. 411, 421–22, 303 A.2d 258 (1973).

**5.** *Mills Novelty Company's Appeal*, 316 Pa. 449, 175 at 548 (1934) (adopting per curiam the opinion of Judge Cunningham of the Superior Court) involved slot machines which also dispensed mints and told the players' fortunes. Whereas in *Klug v. Gazey*, 270 Pa.Super. 445, 411 A.2d 802 (1979), the issue was whether subsection (c) could prevent the destruction of antique machines forfeited before but not destroyed by the effective date of § (c). Implicit was the understanding that if the machines were not "antiques" they would be destroyed. A combination pin ball/slot machine was at stake in *Nu-Ken Novelty, Inc. v. Heller*, 220 Pa.Super. 431, 288 A.2d 919 (1972). The appellant in *Commonwealth v. Joyce*, 202 Pa.Super. 350, 197 A.2d 226 (1963) argued that he was going to convert the machines to operate off of electric impulses instead of coins so that they could be used in England. The court held that whether the machines were possessed with the intent to be used for gambling was a jury question. Similarly in *Commonwealth v. Cancillieri*, 166 Pa.Super. 1, 70 A.2d 669 (1950), it was held that to possess such machines with the intent to use them for gambling purposes was an offense.

Neither party here questions the apparent fact that the machines are "slot machines" within the meaning of the statute. Therefore, we need not define what a gambling device is.

Accordingly, the Commonwealth need not show actual use in a gambling operation.

 Appellee could not have been convicted under subsection (a) since this court held in *Commonwealth v. Rose*, 257 Pa.Super. 514, 390 A.2d 1356 (1978) (Per Curiam Opinion, JUDGE PRICE dissented) that mere possession does not amount to "maintaining" as that word is used in subsection (a). Nevertheless, the forfeiture provisions are applicable to mere possession. Subsection (b) requires that "[a]ny gambling device possessed *or* used in violation of the provisions of subsection (a)" [emphasis added] be seized and forfeited. The legislature here again used the disjunctive "or". Subsection (a) designates a slot machine as a gambling device per se but does not allow for criminal sanctions for possession of such device. However, possession alone is sufficient in an in rem proceeding under subsection (b).

 Our holding here is supported by subsection (c). The legislature established two types of antique slot machines: those used for unlawful purposes and those not so used. Only machines shown to be free from unlawful use are protected. Similarly, non-antique slot machines can be placed into two categories: those used for gambling and those not so used. However, the legislature has not seen fit to distinguish between the two in forfeiture proceedings. See *Klug v. Gazey*, supra. Accordingly, after finding the machines were not antiques, the court erred in ordering them returned to appellee.

A similar result has been reached by a number of our lower courts, operating under the predecessors of the current statute.[6] *In re: Condemnation of Gambling Devices*, 85

---

**6.** Common gamblers

Whoever maintains any gambling device or apparatus, to win or gain money or other property of value, or aids, assists or permits others to do the same, or engages in gambling for a livelihood, or is without any fixed residence, and in the habit or practice of gambling, *is a common gambler, and guilty of a misdemeanor, and upon conviction thereof, shall be sentenced to imprisonment, by separate or solitary confinement at labor, not exceeding one (1) year, or to pay*

Dauph. 1, 1966; *In re Miscellaneous Lot of Gambling Devices*, 23 Cambria 1 (1963); *Commonwealth v. Feather*, 41 Berks 35 (1949); *Petition of Newman*, 49 Lack.Jur. 77 (1948); and *Commonwealth ex rel. v. Twenty-five Slot Machines*, 88 P.L.J. 465 (1940).

The Commonwealth further argues that any and all monies contained in the machines should likewise be forfeited since the money was an integral part of the devices and their operation.[7] We disagree. The Commonwealth relies on *Connelly v. Weber*, 182 Pa.Super. 187, 126 A.2d 474 (1956); and *Commonwealth v. Blythe*, 178 Pa.Super. 575, 115 A.2d 906 (1955) among other cases. The Commonwealth's reliance is misplaced, those cases hold that the money seized must be an integral *part of the illegal gambling operation.*

a fine not exceeding five hundred dollars ($500), or both. 1939, June 24, P.L. 872, § 603. 18 P.S. § 4603.

Establishing gambling places

Whoever sets up or establishes, or causes to be set up or established any game or device of address, or hazard, at which money or other valuable thing may or shall be played for, or staked or betted upon; or procures, permits, suffers and allows persons to collect and assemble for the purpose of playing at, and staking or betting upon such game or device of address, or hazard, for money or other valuable thing; or whoever, being the owner, tenant, lessee or occupant of any premises, leases, hires, or rents the same, or any part thereof, to be used and occupied, or employed for the purpose of playing at, or staking and betting upon such game or device of address, or hazard, for money or other valuable thing, is guilty of a misdemeanor, and on conviction, shall be sentenced to pay a fine not exceeding five hundred dollars ($500), or undergo imprisonment not exceeding one (1) year, or both.

The owner of such premises who shall have knowledge that any such game or device of address, or hazard, has been set up in or upon the said premises, and shall not forthwith cause complaint to be made against the person who has set up or established the same, shall be deemed to have knowingly leased, hired or rented the said premises for the said purposes.

This section shall not be construed to apply to games of recreation and exercise, such as billiards, bagatelle, ten pins, etc., where no betting is allowed. 1939, June 24, P.L. 872, § 605. 18 P.S. § 4605.

The Act of 1939 replaced the Act of March 31, 1860, P.L. 382 §§ 56–60.

7. The Commonwealth admits that this point was not specifically addressed by the lower court. Nonetheless since we find the record adequate to address it we choose to do so.

Here, the Commonwealth admits the machines were not used in a gambling operation. (N.T. pp. 5–6). Accordingly, the money contained therein is not forfeitable.

Appellee presents three arguments for affirming the result of the lower court. We find absolutely no merit to any of appellee's contentions.

First, it argues that since § 5513 requires the Commonwealth to follow the forfeiture procedures established for intoxicating liquor, 47 P.S. § 6–601 et seq., the courts likewise should look for guidance to liquor cases in forfeiture proceedings for gambling devices. Appellee then directs us to the case of *Commonwealth v. Bowers*, 304 Pa. 253, 155 A. 605 (1931). *Bowers* involved the forfeiture of an automobile used in the unlawful transportation of intoxicating liquors. *Bowers* is not applicable in this case. We are concerned with the possession of property which one is not legally permitted to possess. Where possession is unlawful, a court may not order the return of the property to such owner. *Commonwealth v. Bianco Diverona Wine*, 250 Pa.Super. 544, 378 A.2d 1282 (1977). Here, we have found possession of the slot machines to be contrary to the laws of Pennsylvania; appellee has no right to possess the machines.

Secondly, appellee argues that forfeiture here is contrary to the shift in public policy on gambling. It is claimed that the Act of August 26, 1971, P.L. 351, 72 P.S. § 3761–2 which authorized the state lottery demonstrates an acceptance in Pennsylvania of gambling. We disagree.

The public policy of this Commonwealth relative to the manufacture and use of any device or instrumentality, heretofore or hereafter invented, with which money, or anything of value, may be played for, or staked or betted upon, has been declared by our legislature in a series of enactments.

*Mills Novelty Company's Appeal*, 316 Pa. at 458, 175 A. 548.

Section 5513 was enacted on December 6, 1972, subsequent to the enactment of the lottery statute. On July 1,

1978, the legislature after undoubtedly reviewing § 5513, enacted subsection (c) providing for the possession of pre-1941 slot machines. These enactments clearly demonstrate this Commonwealth's continued opposition to the possession of slot machines and other gambling devices.

■■■ Appellee's final contention is that the lower court, sitting as the finder of fact, erred in finding that the machines were not antiques within the meaning of § 5513(c). As we noted earlier, the court chose to believe the Commonwealth's expert witness, who testified that the machines were not manufactured prior to 1941. Our review of the record, supports this finding by the lower court.

Order of the lower court is vacated. The two slot machines are forfeited to the Commonwealth. Any sums of money contained with such machines are to be returned to the appellee.